## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| NICHOLS, et al., v. SMITHKLINE BEECHAM CORPORATION | : | Master File No. 00-CV-6222 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : | |

### STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation") is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Subject to the approval of the Court, this Stipulation is entered into between and among (i) Plaintiffs on behalf of themselves and the Class (as hereinafter defined) (the "End-Payor Plaintiffs") and (ii) Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline (collectively SmithKline Beecham Corporation d/b/a GlaxoSmithKline, GlaxoSmithKline PLC, Beecham Group PLC and SmithKline Beecham, PLC  are referred to herein as "GSK" or "Defendants"), by and through their respective counsel.

WHEREAS, there is pending in the United States District Court for the Eastern District of Pennsylvania a consolidated and coordinated proceeding comprised of actions, including the above-captioned End-Payor Class Actions, in which the End-Payor Plaintiffs have alleged, *inter alia*, that GSK unlawfully obtained patents covering paroxetine and methods of using paroxetine through fraud on the United States Patent and Trademark Office and excluded generic competition through sham patent litigation against generic manufacturers, all in violation of Section 2 of the Sherman Act and numerous state laws;

WHEREAS, Defendants have asserted a number of defenses to the claims by the End-Payor Plaintiffs;

WHEREAS, the End-Payor Plaintiffs and Defendants agree that this Stipulation shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendants or of the truth of any of the claims or allegations alleged in the End-Payor Class Actions or actions consolidated therewith;

WHEREAS, End-Payor Lead Counsel have concluded, after extensive discovery and investigation of the facts and after carefully considering the circumstances of the End-Payor Class Actions, including the claims asserted in the complaints filed in the End-Payor Class Actions and the possible legal and factual defenses thereto, that it would be in the best interests of the End-Payor Class to enter into this Stipulation in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the End-Payor Class; and, further, that End-Payor Lead Counsel consider the settlement set forth herein to be fair, reasonable and adequate and in the best interests of the End-Payor Plaintiffs and all putative members of the End-Payor Class;

WHEREAS, the End-Payor Class is comprised of (i) third-party payors ("TPPs"), and (ii) individual consumers ("Consumers"), who purchased or paid for Paxil or its generic equivalent from January 1, 1998 through September 30, 2004 (the "Class Period");

WHEREAS, Defendants, through their counsel, and the End-Payor Plaintiffs, through the End-Payor Lead Counsel, after more than a year of arms-length negotiations, have conditionally agreed to payment by Defendants of Sixty-Five Million Dollars ($65,000,000) to settle the End-Payor Class Actions;

WHEREAS, after vigorous, arms-length negotiations between Consumer Counsel and Third-Party Payor Counsel, appointed by End-Payor Lead Counsel, to apportion the Settlement Fund between Consumer and TPP members of the End-Payor Class, the Settlement Fund has been divided into two pools, the "Consumer Settlement Pool" and the "TPP Settlement Pool," as more fully described in the Plan of Distribution;

WHEREAS, Defendants, despite their belief that they have good defenses to the claims asserted against them in the End-Payor Class Actions, have nevertheless agreed to enter into this Stipulation to reduce and avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and thereby to put to rest this controversy with respect to the End-Payor Class;

NOW, THEREFORE, it is agreed by and between the undersigned on behalf of Defendants and the End-Payor Plaintiffs that the End-Payor Class Actions and all claims of the End-Payor Class be settled, compromised and dismissed on the merits and with prejudice and, except as hereafter provided, without costs as to End-Payor Plaintiffs or Defendants, subject to the approval of the Court, on the following terms and conditions:

1. **Class Definition.** Subject to the Court's approval, and for the purposes of this Stipulation only, the undersigned agree and consent to the certification of the following End-Payor Class in the End-Payor Class Actions:

All persons or entities in the United States who purchased or paid for Paxil and/or its generic alternatives (known as paroxetine) during the period January 1, 1998 through September 30, 2004 for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.  Excluded from the class are governmental entities (provided, however, a governmental entity is included only to the extent it makes prescription drug purchases as part of a health benefit plan for its employees); Defendants and their officers, directors, management, employees, subsidiaries, and affiliates; persons or entities who purchased Paxil or its generic alternatives for purposes of resale; any person or entity whose only purchase(s) of Paxil were made directly from Defendants or their affiliates and/or whose purchases of generic paroxetine were made directly from the manufacturer thereof (the "End-Payor Class").

2.    **Reasonable Best Efforts to Effectuate This Stipulation.**  The parties and their counsel agree to use their reasonable best efforts, including all steps and efforts contemplated by this Stipulation and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Stipulation.

3.    **Motion for Preliminary Approval.**  As soon as possible and in no event later than ten (10) business days after execution of this Stipulation, Lead End-Payor Counsel shall submit to the Court a motion for preliminary approval of the settlement set forth in this Stipulation, and requesting entry of the Preliminary Approval Order substantially in the form annexed hereto as Exhibit 1.

4.    **Notice to End-Payor Class.**  In the event the Court preliminarily approves the settlement set forth in this Stipulation, End-Payor Lead Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Preliminary Approval Order, provide notice to members of the End-Payor Class in accordance  with the Notice Plan approved in the Preliminary Approval Order.

- 4 -

5.      **Entry of Final Judgment.**  If, after the Settlement Fairness Hearing scheduled by the Court in the Preliminary Approval Order, the Court approves this Stipulation, then counsel for the parties shall request that the Court enter an Order and Final Judgment  in a form to be agreed to by the parties and approved by the Court.

6.      **Effective Date.**  The Effective Date of this Settlement shall be the date when all the following shall have occurred:

(a)      entry of the Preliminary Approval Order substantially in the form annexed hereto as Exhibit A, or entry of a Preliminary Approval Order not substantially in the form annexed hereto with respect to which neither party invokes its termination rights within the period prescribed in Paragraph 7 below;

(b)      final approval by the Court of the Settlement, following notice to the End-Payor Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(c)      entry by the Court of the Order and Final Judgment,  and the expiration of any time for appeal or review of such Order and Final Judgment, or, if any appeal is filed and not dismissed, after such Order and Final Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the event that the Court enters an order and final judgment in form other than that provided above ("Alternative Judgment") and none of the parties hereto elect to terminate this Settlement as permitted by Paragraphs 7 or 8, the date that such Alternative Judgment becomes final and no longer subject to appeal or review.

7.    **Effect of Disapproval**. If the Court declines to finally approve this Stipulation, or if such approval is set aside on appeal or materially modified, or if the Court does not enter a Final Order and Judgment in a form agreed to by the parties, or if the Court enters the Final Order and Judgment and appellate review is sought, and on such review, such final judgment is not affirmed or is affirmed with material modification, then this Stipulation shall be terminated upon the election of Defendants' counsel or, collectively, all of the Plaintiffs' Co-Lead Counsel. A modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund, or the amount of incentive fees to the Class representatives, or the plan of distribution proposed by Class Counsel shall not be deemed a material modification of all or a part of the terms of this Stipulation or such final judgment and shall not give rise to any right of termination.

8.    **Notice of Termination.** Defendants' Counsel and End-Payor Lead Counsel shall each have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) days of: (a) the Court's refusal to approve this Stipulation or any material part of it; (b) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (c) the date upon which an Alternative Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court. A modification at any stage or reversal on appeal of (1) any amount of End-Payor Counsel fees and expenses requested by End-Payor Lead Counsel from the Settlement Fund, (2) the amount of incentive fees to be awarded to End-Payor Class representatives or (3) the proposed plan of distribution shall not constitute a material change that would entitle a party to

terminate the Settlement pursuant to this Paragraph.  In the event there are End-Payor Opt-Outs,
GSK shall have the discretion, which shall not be unreasonably exercised, to terminate the
Settlement and this Stipulation within twenty days of identification by the Claims Administrator
of all Opt-Outs and the amounts of their respective purchases, as set forth in Paragraph 11.

       9.     **Settlement Consideration.**  Subject to the provisions hereof, and in full,
complete and final settlement of the End-Payor Class Actions as provided herein, GSK agrees to
transfer, within seven (7) business days after the parties execute this Stipulation, Sixty-Five
Million Dollars ($65,000,000) (the "Settlement Fund") into an  Escrow Account designated by
the End-Payor Lead Counsel.  The Escrow Account shall be established and administered
pursuant to an Escrow Agreement in a form to be agreed to by the parties.  The Settlement Fund
shall be invested by the Escrow Agent (as defined in the Escrow Agreement) in short term
United States Agency or Treasury Securities (or a mutual fund invested solely in such
instruments) or other similar short-term United States government obligations such as repurchase
agreements backed by United States obligations, and any interest earned thereon shall become
part of the respective TPP Settlement Pool and the Consumer Settlement Pool.  GSK's transfer of
the Settlement Fund to the Escrow Account shall satisfy GSK's obligation to make payments
under this Stipulation.  GSK shall not have any liabilities, obligations or responsibilities with
respect to the investment, payment, disposition or distribution of the Settlement Fund after such
transfer.

       10.     **Qualified Settlement Fund.**  The Escrow Account is intended by the
parties hereto to be treated as a single "qualified settlement fund" for federal income tax
purposes pursuant to Treas. Reg. § 1.468B-1, and to that end the parties hereto shall cooperate

with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  Whether or not final approval of this settlement has occurred, and whether or not the Escrow Account qualifies as a qualified settlement fund within the meaning of Treas. Reg. § 1.468B-1, the Escrow Agent shall cause to be paid from the Escrow Account any taxes or estimated taxes due on any income earned on the funds in the Escrow Account and all related costs and expenses.  The parties elect that the Escrow Account should be treated as a qualified settlement fund from the earliest possible date and agree to make any "relation back" election that may be available.  If amounts received by the End-Payor Class Members, or by GSK upon any refund or other reversion, are construed to be income, it is the recipient's sole responsibility to pay taxes on the amount construed to be income, plus any penalties or interest.

      11.   **Modification of the Settlement Fund.**  Within twenty days of the conclusion of the opt-out period, as specified in the notice to the Class, the Claims Administrator shall provide to GSK all Notices of Exclusion that have been submitted by Class members.  In the event there are any TPP End-Payor Opt-Outs from the End-Payor Class, that validly and timely request exclusion from the End-Payor Class settlement, GSK shall be entitled to a pro-rata refund from the TPP Settlement Pool in an amount equal to the amount that would have been paid to such Opt-Outs from the TPP Settlement Pool had they remained in the Class and made a valid claim, together with any accrued income on such amount.  In the event there are any Consumer End-Payor Opt-Outs that validly and timely request exclusion from the End-Payor Class settlement, GSK shall be entitled to a refund from the Consumer Settlement Pool in an amount equal to the amount that would have been paid to such Opt-Outs from the Consumer

Settlement Pool had they remained in the Class and made a valid claim together with any accrued income on such amount.   Counsel for GSK shall retain in escrow for a period of two years a percentage of the total refund due GSK pursuant to this paragraph equal to the percentage of attorneys' fees awarded to Class Counsel pursuant to Paragraph 12.   GSK shall notify End-Payor Lead Counsel of any settlement between GSK and an End Payor Opt-Out within ten days of execution of a settlement agreement.   Within twenty (20) days of (1) notification by GSK of such settlement or (2) the payment of the refund to GSK pursuant to this Paragraph, whichever is later, End-Payor Lead Counsel shall submit to the Court a motion for costs and expenses, including attorneys' fees, with respect to any portion of the refund amount paid to GSK that is attributable to an End-Payor Opt-Out with whom GSK has reached a settlement.   The Court's decision on the motion by End-Payor Lead Counsel shall be final and non-appealable and GSK shall distribute monies from the Refund Escrow in accordance with the Court's decision.

For purposes of implementation of this Stipulation, including Paragraph 8 and this Paragraph 11, all End-Payor Opt-Outs will be requested in the Notice of Exclusion to provide their paroxetine purchase information during the Class Period.   If the Opt-Out does not provide such information as part of its Notice of Exclusion, or if additional information is needed by the parties hereto or the Claims Administrator from any Opt-Out to implement this Paragraph or any other provision of the Stipulation, the parties shall cooperate to obtain such information from the Opt-Out, including, but not limited to, seeking an order of the Court to obtain such information. End-Payor Lead Counsel shall in the first instance calculate any refund due under this Paragraph. If GSK disputes the refund amount under this Paragraph, or if GSK or End-Payor Lead Counsel, in the absence of sufficient Paxil purchases or other information from an Opt-Out, are unable to

determine the amount of the refund and therefore a dispute exists regarding the refund, or if there is insufficient information regarding purchases by Opt-Outs to evaluate GSK's termination rights under paragraph 8, the parties shall attempt to informally resolve any such dispute.  The Claims Administrator, upon request by GSK, shall provide GSK with claims information and data necessary for GSK to evaluate the validity of the refund calculation or to evaluate its termination rights.  The parties agree promptly to submit any such unresolved disputes to the Court, and the Court's decision shall be final and the parties waive any right to appeal. Any refund provided for in this Paragraph with respect to End-Payor Opt-Outs shall be paid from the respective Settlement Pools.

      12.   **Attorneys' Fees.**  Subject to any order of the Court, Counsel for the Proposed Indirect Purchaser Settlement Class will be paid approved attorneys' fees and expenses within five (5) business days after entry of the Court's order(s) finally approving the settlement and awarding attorneys' fees and expenses. Said fees shall be paid into an Escrow Account as Co-Lead Counsel for Plaintiffs and the Class direct.  ("Attorneys fees Escrow Account"). Disbursement of such attorneys' fees to the Attorneys Fees Escrow Account shall not be delayed by reason of any appeal of the final judgment or motion for reconsideration of the final judgment.  However, if a final judgment by the Court approving the settlement is reversed or reduced on, or as a result of, an appeal or motion for reconsideration, Co-Lead Counsel shall within five (5) business days after receiving written notice of such reversal or reduction from the Court or from GSK, cause a refund to be made to the Settlement Fund in the amount of the reversal or reduction from the fee awarded and paid to Lead Counsel for the Proposed Indirect

Purchaser Settlement Class, plus interest that would have accrued on that amount had it remained in the Settlement Fund.

13.    **All Claims Satisfied by Settlement Fund.**  Each End-Payor Class Member shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims.

14.    **Payment of Expenses.**  The Defendants shall not be liable for any of the expenses of the litigation of the End-Payor Class Actions, including without limitation attorneys' fees, fees and expenses associated with the provision of notice to the members of the End-Payor Class, and claims administration, fees and expenses incurred in administering the Escrow Account and the Settlement Fund, fees and expenses of expert witnesses and consultants, and expenses associated with discovery, motion practice, hearings before the Court and appeals, except as provided in Paragraph 19 below.  All such fees and expenses shall be paid out of the Settlement Fund in accordance with this Stipulation.

15.    **Court Approval of Disbursements and Distributions.**  Court approval shall be required prior to any disbursement or any distribution from the Settlement Fund, other than for any fees and expenses incurred to administer the Escrow Account and the Settlement Fund under the Escrow Agreement, taxes on the Settlement Fund or a refund to GSK pursuant to Paragraph 11.

16.    **Releases.**

**Subject to the reservations contained in paragraph 17:**

(a)    Upon the Effective Date of this Stipulation in accordance with Paragraphs 7 and 8, Defendants and their present and former direct and indirect parents,

subsidiaries, divisions, partners and affiliates, and their respective present and former

stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal

representatives (and the predecessors, heirs, executors, administrators, trustees, successors and

assigns of each of the foregoing) (the "Releasees") shall be released and forever discharged from

all manner of claims, demands, actions, suits, causes of action, damages whenever incurred,

liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees,

known or unknown, suspected or unsuspected, in law or equity, that End-Payor Plaintiffs or any

member or members of the End-Payor Class who have not timely excluded themselves from the

End-Payor Class Actions (as used throughout this Paragraph 16, references to the "Class"

"members of the Class" or "End-Payor Class Members" includes any of their past, present or

future officers, directors, stockholders, agents, attorneys, employees, legal representatives,

trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators,

purchasers, predecessors, successors and assigns, acting in their capacity as such), whether or not

they object to the settlement and whether or not they make a claim upon or participate in the

Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly,

representatively, derivatively or in any other capacity, arising out of any conduct, events or

transactions, prior to the date of the Settlement Agreement alleged or which could have been

alleged in the End-Payor Class Actions against the Releasees concerning the purchase,

marketing, sale, manufacture, pricing of, or the enforcement of intellectual property related to

Paxil or generic paroxetine, or in any way arising out of or related to GSK's agreement with Par

Pharmaceuticals pursuant to which Par is selling paroxetine.  The claims covered by the release

are referred to herein collectively as the "Released Claims."  Each member of the Class hereby

covenants and agrees that it shall not, hereafter, seek to establish liability against any Releasee based, in whole or in part, on any of the Released Claims.

(b)     In addition, each End-Payor Class Member hereby expressly waives and releases, upon the Stipulation becoming effective, any and all provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 15.42.  General Release; extent.  A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  Each End-Payor Class Member may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this Paragraph 16, but each End-Payor Class Member hereby expressly waives and fully, finally and forever settles and releases, upon this Stipulation becoming effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claims with respect to the subject matter of the provision of this Paragraph 16 whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each End-Payor Class Member also hereby expressly waives and fully, finally and forever settles and releases any and all Released Claims it may have against Defendants under § 17200, et seq., of the California Business and Professions Code, which claims are expressly incorporated into this Paragraph 16.

17.     **Reservation of Claims.**  Notwithstanding the above, the Parties do not intend this Stipulation, any part hereof, or any other aspect of the proposed settlement, to release,

or otherwise affect in any way any rights any End-Payor Class Member has or may have against

any other party or entity whatsoever other than the Releasees with respect to the Released Claims

pursuant to Paragraph 16. In addition, the releases set forth in Paragraph 16 shall not release any

claims arising in the ordinary course of business between End-Payor Class Members and the

Released Parties or concerning product liability, breach of contract, breach of warranty, or

personal injury. Furthermore, the releases set forth in Paragraph 16 shall not release any claim

End-Payor Class Members have or may have in the action captioned *In re Pharmaceutical

Industry Average Wholesale Price Litigation,* MDL No. 1456, pending in the United States

District Court for the District of Massachusetts, or any related claim that End-Payor Class

Members have or may have as a Class Member Opt-Out or otherwise apart from such putative

class action, or any litigation alleging similar claims, provided, however, that in such litigation

GSK preserves its right to assert that any recovery by the End Payor Class member in such

litigation related to Paxil should be offset by the End Payor Class Member's pro rata share of the

Settlement Fund. Moreover, the releases set forth in Paragraph 16 shall only apply to a

governmental entity's purchases of Paxil or paroxetine made by the governmental entity as part

of a health benefit plan for its employees and the releases in Paragraph 16 shall not act as a

release of any claim the governmental entity has or may have with respect to any other purchases

of Paxil or paroxetine by the governmental entity, including the marketing, sale, manufacture,

pricing or enforcement of intellectual property related to the governmental entity's other

purchases of Paxil or paroxetine.

      18.    **Preservation of Rights.**  The parties hereto agree that this Stipulation,

whether or not the Effective Date occurs, and any and all negotiations, documents and

- 14 -

discussions associated with it, shall be without prejudice to the rights of any party; shall not be

deemed or construed to be an admission or evidence of any violation of any statute or law, of any

liability or wrongdoing by Defendants or of the truth of any of the claims or allegations

contained in the complaint or any other pleading; and evidence thereof shall not be discoverable

or used directly or indirectly by the End-Payor Class or any third party, in any way (except that

the provisions of this Stipulation may be used by the parties to enforce the provisions of the

Stipulation), whether in the End-Payor Class Actions or in any other action or proceeding.  The

parties expressly reserve all their rights if this Stipulation does not become final substantially in

accordance with the terms of this Stipulation.

      19.    **Termination.**  If this Stipulation is terminated pursuant to Paragraph 7 or

8 hereto, or the Effective Date is prevented from occurring for any reason, then (a) the

Settlement Fund, including all accrued interest or income, shall be returned to GSK net of (i)

taxes paid or due to be paid on the Settlement Fund, (ii) the fees and costs paid or incurred for

notice and administration of the Settlement, (iii) any fees or costs paid or incurred for

administration of the Escrow Account and the Settlement Fund and (iv) any opt-out refund

previously repaid to GSK pursuant to Paragraph 11; (b) the Stipulation shall be of no force or

effect, except for payment of any taxes, notice and administrative fees and costs or refund as

referenced herein from the Settlement Fund; (c) any release pursuant hereto shall be of no force

or effect; and (d) the parties shall request that the Court vacate any order certifying the End-

Payor Class.  The parties expressly reserve all of their rights if this Stipulation is terminated or

does not become final.

20.   **No Admission.**  Nothing in this Stipulation shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority present or future, by Defendants including, without limitation, that Defendants have engaged in any conduct or practice that violates any antitrust statute, unfair and deceptive trade practices statute or other law.  Neither this Stipulation, nor any negotiations preceding it, nor any proceedings undertaken in accordance with the terms set forth herein, shall be construed as or deemed to be evidence of or an admission or concession by Defendants as to the validity of any claim that End-Payor Plaintiffs or the End-Payor Class have or could have asserted against them or as to any liability by them, which liability is hereby expressly denied and disclaimed by Defendants. Neither this Stipulation, nor any of its provisions, nor any statement or document made or filed in connection herewith nor the fact of this Stipulation, shall be filed, offered, received in evidence or otherwise used in any action or proceeding or any arbitration, except in connection with the parties' application for approval or enforcement of this Stipulation and all proceedings incident thereto, including requests for attorneys' fees, costs and disbursements and compensation to the End-Payor Class.

21.   **Stay and Resumption of Proceedings.**  The parties agree, subject to approval of the Court, that all proceedings in this litigation, other than proceedings relating to the settlement contemplated herein (including but not limited to providing Notice of the Pendency of this action as a class action), shall be stayed except to the extent discovery is necessary with respect to the amount of paroxetine purchases or other information regarding End-Payor Opt-Outs and for purposes of administering and consummating this Stipulation.  In the event that this

Stipulation is not approved by the Court or the settlement is terminated or the Effective Date is prevented from occurring, all such stayed proceedings will resume in the End-Payor Class Actions in a reasonable manner to be approved by the Court.

      22.    **Consent to Jurisdiction.**  Defendants and End-Payor Plaintiffs hereby irrevocably submit to the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding or dispute arising out of or relating to this Stipulation or the applicability of this Stipulation.

      23.    **Resolution of Disputes:  Retention of Jurisdiction.**  Any disputes between or among Defendants and any End-Payor Class Members concerning matters contained in this Stipulation shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court.  The Court shall retain jurisdiction over the implementation and enforcement of this Stipulation.

      24.    **Enforcement of Stipulation.**  Subject to Paragraph 17 above, this Stipulation may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims and may be filed, offered and received into evidence and otherwise used for such defense.

      25.    **Binding Effect.**  This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

      26.    **Authorization to Enter Stipulation.**  The undersigned representative of Defendants represents that he/she is fully authorized to enter into and to execute this Stipulation on behalf of the Defendants.  End-Payor Lead Counsel represent that they are fully authorized to

conduct settlement negotiations with defense counsel on behalf of the End-Payor Plaintiffs and

to enter into, and to execute, this Stipulation on behalf of the End-Payor Class, subject to Court

approval pursuant to Fed. R. Civ. P. 23(e).

27.    **No Party Is the Drafter.**  None of the parties hereto shall be considered

to be the drafter of this Stipulation or any provision hereof for the purpose of any statute, case

law or rule of construction that would or might cause any provision to be construed against the

drafter hereof.

28.    **Choice of Law.**  All terms of this Stipulation shall be governed by and

interpreted according to the substantive laws of the Commonwealth of Pennsylvania without

regard to its choice of law or conflict of laws principles.

29.    **Amendment or Waiver.**  This Stipulation shall not be modified in any

respect except by a writing executed by all the parties hereto, and the waiver of any rights

conferred hereunder shall be effective only if made by written instrument of the waiving party.

The waiver by any party of any breach of this Stipulation shall not be deemed or construed as a

waiver of any other breach, whether prior, subsequent or contemporaneous, of this Stipulation.

30.    **Execution in Counterparts.**  This Stipulation may be executed in

counterparts.  Facsimile signatures shall be considered as valid signatures as of the date thereof;

although the original signature pages shall thereafter be appended to this Stipulation and filed

with the Court.

31.     **Integrated Agreement.**  This Stipulation, including the exhibits hereto, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and between the parties hereto.

32.     **Construction.**  This Stipulation shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Stipulation, for a complete resolution of the Released Claims with respect to the Releasees.

IN WITNESS WHEREOF, the parties have executed this Stipulation and Agreement of Settlement as of _Oct 1_, 2004.

**LEAD COUNSEL
FOR PLAINTIFFS:**                           **MILLER FAUCHER and CAFFERTY LLP**

By: _____
Ellen Meriwether
One Logan Square, Suite 1700
18th and Cherry Streets
Philadelphia, PA  19103
Phone: 215-864-2800

**RODANAST, P.C.**

By: _____
Dianne M. Nast
801 Estelle Drive
Lancaster, PA  17601
Phone: 717-892-3000

**THE WEXLER FIRM LLP**

By:_____
Kenneth A. Wexler
One North LaSalle Street
Suite 2000
Chicago, IL  60602
Phone:  312-346-2222


**COUNSEL FOR DEFENDANT**:   **DECHERT LLP**


By:_____
Joseph A. Tate
Christine Levin
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA  19103
Phone:  215-994-2350

THE WEXLER FIRM LLP


By:_____
Kenneth A. Wexler
One North LaSalle Street
Suite 2000
Chicago, IL  60602
Phone:  312-346-2222

**COUNSEL FOR DEFENDANT**:   **DECHERT LLP**


By:_____
Joseph A. Tate
Christine Levin
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA  19103
Phone:  215-994-2350